UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL MOTEKAITIS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> USI INSURANCE SERVICES, LLC, et al., <br><br> Defendants. | Case No. 24-cv-00885-RS <br><br> **ORDER REGARDING MOTIONS TO DISMISS** |

**I. INTRODUCTION**

Plaintiffs Paul Motekaitis and Carri Mangelli Kneass aver that they were defamed by a long list of Defendants, including their former employer USI Insurance Services, LLC; six USI employees; Marsh & McLennan Insurance Agency, LLC ("MMA"); and one of its employees, David Russell. In essence, Plaintiffs claim that USI and its top brass harmed them by writing and then widely disseminating a maliciously false email about the circumstances of Plaintiffs' split with the firm. After receiving leave to amend the complaint, Plaintiffs added a defamation claim against Russell and MMA for their part in allegedly republishing the email by forwarding it to others in the insurance industry. Russell and MMA now move to dismiss, contending that Plaintiffs lack jurisdiction over Russell and that they fail to state a claim against either Defendant. MMA additionally moves to strike the complaint pursuant to California's anti-SLAPP statute. For the reasons explained below, Russell and MMA's motions to dismiss are granted.

## II. BACKGROUND

This order assumes the parties' familiarity with the facts, discussed briefly below. In relevant part, the operative third amended complaint ("TAC") avers that David Russell is the managing director of MMA, an insurance agency that allegedly recruited Plaintiffs around the time of their departure from USI. After learning of an email ("the Kane Email") that USI had circulated, an MMA employee Plaintiffs dub "Individual 1" asked Motekaitis about the "weird rumors" therein. TAC ¶ 56. Plaintiffs aver that Motekaitis told Individual 1 the email contained falsehoods and misrepresentations, and that Individual 1 responded by reassuring Motekaitis "he did not believe the Kane Email and that this situation reflected a corporate hit." *Id.* ¶ 57.

Despite this conversation, Plaintiffs aver that MMA staff republished the Kane Email. *Id.* ¶ 57. Plaintiffs specifically allege that Russell began to republish and disseminate the email internally, to MMA staff. *Id.* With no apparent effort to verify its contents, MMA staff also allegedly republished the email externally, "throughout the Private Risk Management industry, all in efforts to poach [Plaintiffs'] clients and/or hinder their abilities to compete against MMA." *Id.*; *see also* TAC ¶ 59–60. The only specific such example in the complaint is the allegation that Emily Milnes, an MMA employee not named as a defendant, forwarded the email to the head of underwriting at AIG—"one of the largest sources of business for [Plaintiffs]"—so as to tarnish their reputations. *Id.* ¶ 58. Russell, Plaintiffs claim, "approved the dissemination of the email," and both he and the company "acted with malice" by republishing it even "while entertaining serious doubts as to the veracity of the statements contained therein." *Id.* ¶ 60.

## III. LEGAL STANDARD

### A. Motion to Dismiss for Lack of Jurisdiction

An action is subject to dismissal if the Court lacks personal jurisdiction over the defendants. *See* Fed. R. Civ. P. 12(b)(2). Where there is no federal statute applicable to determine personal jurisdiction, a district court applies the personal jurisdiction law of the state where it sits. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). The relevant California law requires only that the exercise of personal jurisdiction comply with federal due

process requirements. *See id.* at 800-01. Personal jurisdiction over a defendant who does not reside in the forum state may be exercised consistent with due process if the defendant has either a continuous and systematic presence in the state (general jurisdiction), or minimum contacts with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice" (specific jurisdiction). *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1946) (citation and internal quotation marks omitted).

Specific jurisdiction may be invoked over a non-resident defendant upon the satisfaction of three requirements: "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable." *Schwarzenegger*, 374 F.3d at 802 (citation omitted).

"The plaintiff bears the burden of satisfying the first two prongs of the test." *Id.* (citation omitted). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)). The plaintiff need only make a prima facie showing of jurisdiction to defeat a motion to dismiss but "may not simply rest on the bare allegations of the complaint." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (internal quotation marks and alteration omitted). "[U]ncontroverted allegations must be taken as true, and conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id.* (internal quotation marks and alteration omitted).

**B. Motion to Dismiss for Failure to State a Claim**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations" are not

required, a complaint must have sufficient factual allegations to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *See Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (internal quotation marks and citation omitted). When evaluating such a motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1140 (9th Cir. 2017). It must also "draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

**C. Motion to Strike**

A court may strike from a pleading any redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f). Under California law, such a motion may be made "for the pre-trial dismissal of certain actions, known as Strategic Lawsuits Against Public Participation, or SLAPPs, that masquerade as ordinary lawsuits but are intended to deter ordinary people from exercising their political or legal rights or to punish them for doing so." *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013) (internal quotation marks omitted) (quoting *Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003), *superseded in part by statute on other grounds as stated in Breazeale v. Victim Servs., Inc.*, 878 F.3d 759, 766–67 (9th Cir. 2017)). The relevant statute provides that a party may file a motion to strike a cause of action against it if the complaint "aris[es] from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." CAL. CIV. PROC. CODE § 425.16(b)(1). The statute is to be "construed broadly." *Id.* § 425.16(a); *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003).

"A court considering a motion to strike under the anti-SLAPP statute must engage in a two-part inquiry." *Vess*, 317 F.3d at 1110. First, "the moving defendant must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's constitutional

right to free speech." *Makaeff*, 715 F.3d at 261. "The burden then shifts to the plaintiff [] to establish a reasonable probability that it will prevail on its claim in order for that claim to survive dismissal." *Id.*

## IV. DISCUSSION

### A. Russell

As a Connecticut resident, Russell contends that a District Court for the Northern District of California cannot exercise jurisdiction over him, either general or specific. Plaintiffs concede on the general jurisdiction front but maintain that specific jurisdiction is appropriate, given their allegations that Russell committed what they describe as California-targeted actions—namely, the forwarding of an email (allegedly defaming Plaintiffs, who are California residents) to an audience which included other Californians.

Plaintiffs' pleadings fail to allege facts sufficient to establish specific jurisdiction. Because the at-issue claim sounds in tort, Plaintiffs must first demonstrate that Russell purposefully directed his activities at California—a requirement that involves showing how Russell "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017) (citation omitted). Although the TAC sufficiently alleges that Russell acted intentionally when he authorized the republication of the email, Plaintiffs fail to allege that Russell in any way targeted California or knew that harm would likely occur there. All the TAC says about him is that he "began to republish and disseminate the Kane email within MMA," TAC ¶ 57, and that he "acted with malice" when he "approved the dissemination of the Kane Email" while "entertaining serious doubts as to the veracity of the statements contained therein." *Id.* ¶ 60; *see also* ¶ 106-110. Nothing about those allegations has anything to do with California. In the defamation count, Plaintiffs further aver that Russell approved and authorized the email's republication to "clients and prospective employers . . . so as to cause the highest possible harm to Plaintiffs," *id.* ¶ 109, but this also fails to connect the dots between Russell and the forum state.

Plaintiffs attempt to rebut these shortcomings by highlighting the portions of their complaint that describe their own California relations. In their view, the fact that they were based in California and had California-based connections supports the inference that Russell targeted California and knew harm would result there. As the Supreme Court has explained, however, courts "must look to the defendant's 'own contacts' with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum." *Axiom Foods, Inc.*, 874 F.3d at 1070 (quoting *Walden v. Fiore*, 571 U.S. 277, 289–90 (2014)). In other words, "'mere injury to a forum resident is not a sufficient connection to the forum,' nor is defendant's knowledge of plaintiff's '"strong forum connections" . . . combined' with the 'foreseeable harm' the plaintiff suffered in the forum." *Serenium, Inc. v. Zhou*, No. 20-cv-2132-BLF, 2021 WL 3111758, at *5 (N.D. Cal. July 22, 2021) (quoting *Walden*, 571 U.S. at 289–90).

Plaintiffs fall short as to both the second and third prongs of the purposeful direction test. Even with all allegations accepted as true and all reasonable inferences drawn in their favor, they cannot overcome the plain language of their own complaint. *See Jean Zheng v. Nan Li*, No. 18-cv-08387, 2019 WL 1670751, at *5 (C.D. Cal. Mar. 1, 2019) ("Plaintiffs have neither alleged nor offered any evidence of the extent to which Defendant's audience included California residents; thus, they are merely speculating as to whether Defendant was specifically targeting California."). Because Plaintiffs fail to carry their burden of showing that Russell purposefully directed his activities at the forum state, it is unnecessary to examine the specific jurisdiction test's second and third prong, *i.e.*, whether the claim arises out of or relates to the defendant's forum-related activities and whether exercising jurisdiction would be reasonable in the sense of fair play and substantial justice. At bottom, Russell's alleged involvement in the republication of the Kane Email is insufficiently related to California to satisfy the minimum contacts requirements of due process. Russell's motion to dismiss for lack of jurisdiction is therefore granted.

**B. MMA**

MMA urges the court to dismiss Plaintiffs' defamation claim against it, arguing that the Complaint fails to plead requisite facts, that Section 230 bars the claim, and/or that any

ORDER GRANTING MOTIONS TO DISMISS
CASE NO. 24-cv-00885-RS

republication of the Kane Email was privileged.[1]

MMA's first argument is unconvincing. "To state a claim for defamation under California law, a plaintiff must allege the defendant (1) published a (2) false, (3) defamatory, and (4) unprivileged statement that (5) either has a natural tendency to injure or causes special damage." *Chemla v. FedEx Corp. Servs., Inc.*, No. 20-cv-06581-RS, 2021 WL 4497862, at *2 (N.D. Cal. Mar. 29, 2021) (citing Cal. Civ. Code §§ 44-46); *see also Taus v. Loftus*, 40 Cal.4th 683, 720 (2007). Here, Plaintiffs have sufficiently alleged that MMA staff published to others in the insurance industry the Kane Email, which they claim was false and defamatory, in a way that has a natural tendency to injure them. *See* TAC ¶ 109–10 (alleging the elements of defamation). Although Defendants complain that Plaintiffs fails to aver with specificity the statements that were false, who made them, and when, the complaint repeatedly explains the defamatory contents in the email and further asserts that MMA employees, including Emily Milnes, republished the email on or around January 23, 2024. *See, e.g.*, TAC ¶ 58.

MMA's second argument—that Plaintiffs' defamation claim must be dismissed pursuant to Section 230—fares much better. That statute provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. §230(c)(1). "Section 230(c)(1) immunity is an affirmative defense, and the burden is always on the party advancing an affirmative defense to establish its validity[.]" *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 738 (9th Cir. 2024) (internal citations and quotation marks omitted). To carry that burden, Defendants cite to *Phan v. Pham*, 182 Cal. App. 4th 323, 324 (2010), an apt comparator to this case in which the California Court of Appeal expressly held that, pursuant to Section 230, someone who "receive[s] a defamatory e-mail over the internet and simply hit[s] the forward icon. . . cannot be held liable for the defamation."

Plaintiffs do not contest that MMA was a user of an interactive computer service, nor that

---

[1] MMA and Russell also argue for dismissal of an intentional infliction of emotional distress claim, which Plaintiffs alleged against "All Defendants." Plaintiffs explain in opposition that they did not intend to allege that claim against Russell and MMA. That claim is therefore waived as against Russell and MMA.

MMA received the Kane Email from another information content provider. Instead, Plaintiffs respond that MMA did more than just forward the email because it "also added content that defamed Plaintiffs." Opp. Br., Dkt. No. 76 ("Opp. Br."), at 20. The complaint, however, makes no such allegation—to the contrary, it merely states that MMA republished and disseminated the email. TAC ¶ 57–59. Featuring no allegation that MMA employees did anything regarding the content of the email other than to "hit the forward icon," Plaintiffs' defamation claim against MMA is accordingly barred as a matter of law. *See Phan*, 182 Cal. App. 4th at 324 (citing *Barrett v. Rosenthal*, 40 Cal.4th 33, 51 (2006)).

Plaintiffs suggest that they could amend the complaint to include an allegation that Russell, as managing director of MMA, materially contributed to the Kane Email by stating that Motekaitis "had the largest book in the state of California (now we know how)" in a preface to an email that he forwarded internally. It is curious that Plaintiffs have not added this allegation to the pleadings already, given that they are now on their third amended complaint.

At any rate, this additional unpled allegation would hardly repair Plaintiffs' fundamental Section 230 problem. In *Phan*, the court found that where the defendant forwarded an allegedly defamatory email and "introduce[d] it with some language of [defendant's] own," the introduction was not sufficient to "materially contribute" to the underlying defamatory email such that Section 230 immunity was defeated. *See* 182 Cal. App. 4th at 325 (discussing import of introductory paragraph stating "[e]verything will come out to the daylight, I invite you and our classmates to read the following comments[.]"). Likewise here, Russell's addition to the email did not materially contribute to the alleged defamation. His quippy introduction is quite contrary to the sort of contribution that the Ninth Circuit has recognized as fatal to Section 230 immunity. *See Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1172 (9th Cir. 2008) (finding a material contribution where a defendant website "[wa]s directly involved with developing and enforcing a system that subjects subscribers to allegedly discriminatory housing practices"); *see also Nicholas Servs., LLC v. Glassdoor, LLC*, No. 24-cv-05789-RS, 2025 WL 240765, at \*3–\*4 (N.D. Cal. Jan. 17, 2025) (finding no material contribution).

Moreover, even if the unpleaded allegation about Russell's introductory paragraph could

be incorporated into the complaint via amendment such that it might be construed as a material contribution that forecloses Section 230 immunity, Plaintiffs would nevertheless run headlong into MMA's Anti-SLAPP arguments.  As to its burden to make a prima facie showing that the defamation claim arises out of protected activity, MMA explains that the at-issue email concerned public interests protected by CAL. CIV. PROC. CODE § 425.16(b)(1).  "The 'public interest' requirement of section 425.16(e) is construed broadly." *Henley v. Jacobs*, No. 18-cv-2244-SBA, 2019 WL 8333524, at *9 (N.D. Cal. Aug. 2, 2019) (citing *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 23 (2007)).  "California courts have not definitively adopted any particular test to determine whether a statement qualifies as a matter of public interest for purposes of § 425.16." *Henley*, 2019 WL 8333524, at *9 (citing *Hilton v. Hallmark Cards*, 599 F.3d 894, 906 (9th Cir. 2010)). "Nonetheless, a 'commonly cited test' is set forth in *Rivero v. Am. Fed'n of State, Cnty., & Mun. Emps.*, 105 Cal. App. 4th 913 (2003) ("Rivero")." *Id.* (citing *Hilton*, 599 F.3d at 906).  "In *Rivero*, the California Court of Appeal identified three categories of public issues: (1) statements concerning a person or entity in the public eye; (2) conduct that could directly affect a large number of people beyond the direct participants; (3) or a topic of widespread, public interest." *Id.* (citing *Hilton*, 599 F.3d at 906) (quotations omitted).  All three categories are satisfied here, MMA argues, given the TAC's own averments about Plaintiffs being "prominent" insurance brokers with "over 1,800" clients.  TAC ¶¶ 17, 18, 43.

Plaintiffs fail to rebut MMA's argument that they were persons in the public eye, that the email concerned conduct that could directly affect a large number of people, nor that widespread, public interest existed as to the topic of their alleged misconduct.  Instead, they primarily argue that the email constituted commercial speech exempt from California's Anti-SLAPP law.  *See* CAL. CIV. PROC. CODE § 425.17(c).  As the California Court of Appeal has explained, that exemption means that "[a] defendant who makes statements about a business competitor's goods or services to advance the defendant's business cannot use the anti-SLAPP statute against causes of action arising from those statements." *Xu v. Huang*, 73 Cal. App. 5th 802, 813 (2021).

Although Plaintiffs' argument presupposes that MMA is their business competitor, it is hard to see how.  The TAC makes clear that Plaintiffs were no longer in the business of insurance

brokering at the time MMA staff forwarded the email. *See* TAC ¶ 42 (detailing that Plaintiffs were terminated on January 22, 2024); *id.* ¶ 50 ("Plaintiffs have been unable to obtain employment in the industry."); *id.* ¶ 58 (identifying the forwarding of the email as occurring on January 23, 2024). Based on the averments in the complaint, it does not appear that MMA was in competition with either Plaintiff such that the commercial speech exception could apply. Unlike the situation in *Huang*, where the plaintiff and defendant were both in the business of selling insurance at the time of the alleged defamation, here, Plaintiffs were not in the same business as MMA—they were not in business at all. The commercial speech exception to California's Anti-SLAPP law is therefore inapplicable.

Stripped of that argument, Plaintiffs must bear their burden of "establish[ing] a reasonable probability that [they] will prevail on [their] claim" in order to defeat MMA's Anti-SLAPP motion. *See Makaeff*, 715 F.3d at 261. They fail to do so. At the close of their briefing, Plaintiffs suggest that MMA's forwarding of the email could not have been in the public interest because it "made its defamatory statements in private settings for the purpose of obtaining business." Opp. Br. at 11. But the complaint alleges far more than that—that MMA spread the email "to Plaintiffs' contacts in the insurance industry . . . so as to cause the highest possible harm to Plaintiffs." TAC ¶ 109. The complaint also fails to demonstrate a reasonable probability of success for the Section 230 issues explained above: the only evidence of any contribution to the Kane Email was Russell's introductory quip, which is immaterial under Ninth Circuit caselaw. Indeed, this entire exercise is somewhat academic, given that the only allegation which might scuttle Section 230 immunity so as to warrant the Anti-SLAPP analysis—*i.e.*, the introductory sentence that Russell allegedly added to one of the forwarded emails— is missing from the complaint.

## V. CONCLUSION

For the reasons explained above, personal jurisdiction is lacking as to Russell; his motion to dismiss is therefore granted. As to MMA, Plaintiffs fail to state a legally cognizable claim sufficient to overcome Section 230 immunity. MMA's motion to dismiss is likewise granted, without further leave to amend the complaint.

**IT IS SO ORDERED**.

Dated: March 5, 2025

_____
RICHARD SEEBORG
Chief United States District Judge

ORDER GRANTING MOTIONS TO DISMISS
CASE NO. 24-cv-00885-RS

11